**FILED**

February 25, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ JU

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JASON WAYNE MCBRIDE, | § | |
| TDCJ No. 02139484, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL NO. SA-20-CV-0401-OLG |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| *Respondent*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are *pro se* Petitioner Jason Wayne McBride's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and supplemental memorandums in support (Dkt. No. 1), Respondent Bobby Lumpkin's Answer (Dkt. No. 17), and Petitioner's Reply (Dkt. No. 19) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes that Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). The Court further finds that Petitioner should be denied a certificate of appealability.

**I.     BACKGROUND**

In January 2016, a Comal County grand jury indicted Petitioner on six criminal counts: (1) continuous violence against family, (2) assault—family violence by impeding breath or circulation, occurring on or about September 20, 2014, (3) assault—family violence by impeding breath or circulation, occurring on or about March 29, 2015, (4) aggravated assault with a deadly weapon, (5) repeated violations of a court order of emergency protection, and (6) evading arrest while having a previous conviction. (Dkt. No. 18-74 at 71–74). A jury acquitted Petitioner of

count 3 but found him guilty of the remaining counts. *State v. McBride*, No. CR2016-008 (207th Dist. Ct., Comal Cnty., Tex. Apr. 19, 2017); (Dkt. No. 18-74 at 75–94). Petitioner elected to have the trial judge assess punishment, who imposed the following sentences after a separate punishment hearing: (1) twenty years of imprisonment for counts 1, 2, and 5, (2) forty years of imprisonment for count 4, and (3) ten years of imprisonment for count 6. *Id*. These sentences are all to run concurrently.

On direct appeal, The Texas First Court of Appeals reformed the trial court's judgment by removing the deadly weapon findings for counts 1, 2, 5, and 6, and then affirmed the reformed judgment in an unpublished opinion. *McBride v. State*, No. 01-17-00528-CR, 2018 WL 2341659 (Tex. App.—Houston [1st Dist.], May 24, 2018, pet. ref'd); (Dkt. No. 18-3). The Texas Court of Criminal Appeals then refused Petitioner's petition for discretionary review (PDR). *McBride v. State*, No. 0645-18 (Tex. Crim. App. Sept. 12, 2018); (Dkt. No. 18-14). Petitioner appealed his case to the United States Supreme Court, but his petition for writ of certiorari was denied on February 19, 2019. *McBride v. Texas*, 139 S. Ct. 1182 (2019).

Thereafter, Petitioner filed a state habeas corpus application challenging the constitutionality of his state court conviction, but the Texas Court of Criminal Appeals denied the application without written order on January 29, 2020. *Ex parte McBride*, No. 86,371-08 (Tex. Crim. App.); (ECF Nos. 18-58, 18-73 at 3–35). Six weeks later, Petitioner initiated the instant proceedings by filing a petition for federal habeas relief. (Dkt. No. 1 at 13). In the petition and accompanying supplemental memorandums, Petitioner raises the following claims for relief: (1) his trial counsel rendered ineffective assistance in a variety of ways,[1] (2) his

---

[1]   Petitioner actually raises numerous overlapping ineffective-assistance-of-trial-counsel (IATC) claims alleging that counsel failed to: (a) object to a double jeopardy violation or preserve the issue for appeal, (b) object to the amendment of the indictment, (c) consult with

conviction on counts 2–6 violated double jeopardy principles, (3) his rights under the Confrontation Clause and Due Process Clause were violated by his exclusion from a pre-trial competency hearing and a hearing concerning the indictment, (4) the prosecution committed misconduct by presenting false information in the indictment and again during trial, and (5) there was no evidence to support a conviction on count 5.

## II.   STANDARD OF REVIEW

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established

---

or allow him to testify at trial, (d) secure his presence at a pretrial competency hearing, (e) file a motion to suppress his interviews with police or object at trial, (f) investigate the arrest reports to see if there was evidence to support them, (g) obtain discovery, (h) raise a defense based on drug use by both him and the victims, (i) preserve errors for appellate review, (j) attempt to plea or inform him of any plea offers, (k) go over the jury instruction charge with him, (l) remedy a conflict of interest, (m) have the court include his arrest reports as exhibits to refresh the memories of witnesses, and (n) allow him to view the PSI report before sentencing.

federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## III.   ANALYSIS

### A.   Exhaustion and Procedural Default

In his first allegation, Petitioner raises numerous IATC claims arguing that his trial counsel's performance violated his Sixth Amendment right to counsel. In his third allegation, Petitioner contends he was denied his right to be present at (a) a pretrial competency hearing and (b) a pretrial hearing concerning his indictment. In response, Respondent contends that several of the IATC allegations raised in Claim 1, as well as Claim 3(a), are unexhausted and procedurally barred from federal habeas corpus relief because Petitioner did not raise them during his direct appeal or state habeas proceedings. Respondent is correct.

Before seeking review in federal court, a habeas corpus petitioner must first present his claims in state court and exhaust all state court remedies through proper adjudication on the merits.  *See* 28 U.S.C. § 2254(b)(1)(A) (stating that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  The exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner.  *Baldwin v. Reese*, 541 U.S. 27, 29–32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002).  In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals, and a prisoner must present the substance of his claims to the Texas Court of Criminal Appeals in either a petition for discretionary review or an application for writ of habeas corpus under Texas Code of Criminal Procedure Article 11.07.  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *Bautista v. McCotter,* 793 F.2d 109, 110 (5th Cir. 1986).

In this case, the record confirms that Petitioner did not properly present the following allegations to Texas Court of Criminal Appeals in either a state habeas corpus application or his petition for discretionary review:  Claims 1(d), (e), (h), (k), (m), (n), and Claim 3(a).  Because these allegations are being presented for the first time in this federal habeas proceeding, they are unexhausted under § 2254(b).

Further, should this Court now require Petitioner to return to state court to satisfy the exhaustion requirement, the Texas Court of Criminal Appeals would find the claims procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure, as Petitioner already challenged his conviction in a previous state habeas application.  Because Texas would likely bar another habeas corpus application by Petitioner regarding this conviction, he has committed a procedural default that is sufficient to bar federal

5

habeas corpus review. *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (finding a procedural default occurs "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.") (citation and internal quotation marks omitted); *see also Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted by failing to "fairly present" a claim to the state courts in his state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred); *Jones v. Johnson*, 171 F.3d 270, 276-77 (5th Cir. 1999) (same).

Consequently, Petitioner is precluded from federal habeas relief on the unexhausted IATC claims contained in Claim 1 and the unexhausted portion of Claim 3 (concerning the competency hearing), unless he can show cause for the default and resulting prejudice, or demonstrate that the Court's failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004). But Petitioner does not argue that cause and prejudice should excuse the default, nor does he demonstrate that the Court's denial of the claims will result in a "fundamental miscarriage of justice." Thus, Fifth Circuit precedent compels the denial of Petitioner's unexhausted claims—Claims 1(d), (e), (h), (k), (m), (n), and Claim 3(a)— as procedurally defaulted.

### B.      The Remaining IATC Claims (Claim 1)

Petitioner's remaining IATC claims (Claims 1(a), (b), (c), (f), (g), (i), (j), and (l)) allege he was denied the right to effective assistance of counsel by his trial counsel's failure to (1) object to a double jeopardy violation or preserve the issue for appeal, (2) object to the

amendment of the indictment, (3) consult with or allow him to testify at trial, (4) obtain arrest reports and other discovery, (5) raise objections to preserve issues for appeal, (6) inform him of plea offers or negotiate on his behalf, and (7) remedy a conflict of interest. Each of these allegations were raised during Petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals. As discussed below, Petitioner fails to demonstrate the state court's rejection of these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

        1.    <u>Petitioner's Claims are Conclusory.</u>

The Court initially notes that Petitioner provides no argument or authority for any of his IATC claims, despite filing two supplemental memorandums along with his petition. Instead, in what appears to be a stream of consciousness, Petitioner simply lists a series of perceived errors committed by counsel and then moves on to the next alleged error without elaboration. In fact, many of these allegations are only a sentence or two long and lack any explanation whatsoever. Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same).

Here, Petitioner's allegations are conclusory, speculative, and unsupported by any evidence or facts. "[A]bsent evidence in the record," this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross*, 694 F.2d at 1011). For this reason

alone, petitioner's claims could be denied.  *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

2.    The *Strickland* Standard

Nevertheless, the Court will review Petitioner's Sixth Amendment IATC claims under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense.  466 U.S. at 687–88, 690.

*Strickland*'s first prong "sets a high bar."  *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms."  *See Rhoades v. Davis*, 852 F.3d 422, 431–32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687– 88).   Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).

To satisfy *Strickland*'s second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under this prong, the "likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  A habeas petitioner has the burden of proving both prongs of the *Strickland* test.  *Wong v. Belmontes*, 558 U.S. 15,

8

27 (2009).  Surmounting this difficult standard "is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d).  *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).  In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable."  *Richter*, 562 U.S at 101.  That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*. at 105.

> 3.    Petitioner's Claims Lack Merit.

Petitioner first contends trial counsel was ineffective for failing to object to a double jeopardy violation and the improper amendment of his indictment during a pretrial hearing. Petitioner believes counsel should have objected to preserve these errors for appellate review. But as discussed further in the following sections, Petitioner was not subjected to a double jeopardy violation, nor was his indictment improperly amended without his presence.  *See* Sections III (C) and (D), *infra*.

As a result, any objection made by counsel on such grounds would have been futile, and "counsel is not required to make futile motions or objections."  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *see also Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel

cannot be deficient for failing to press a frivolous point).  In fact, counsel chose not to object because he believed such a challenge was not supported by law.  (Dkt. No. 18-74 at 2–5). Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument.  *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).  The state habeas court's denial of these claims was therefore not unreasonable.

The remainder of Petitioner's allegations were also raised during his state habeas proceedings.  In recommending the denial of Petitioner's application, the state habeas trial court adopted counsel's explanations (given by affidavit) and issued these additional findings:

1)     [Petitioner] and his allegations are not credible.

2)     This Court is familiar with trial counsel, who has practiced before the Court for many years. Regarding trial counsel's assertions that:

- [Petitioner]'s "allegations are meritless. Many are defamatory and perjurious." State's October 21, 2019, Supplemental Answer Appendix "A" at 2.

- "I visited [Petitioner] in Comal County Jail on numerous occasions.  My law partner also visited with him multiple times.  I prefer to communicate with clients in person whenever possible." *Id.* at 3.

- Trial counsel "urged [Petitioner] to consider either accepting the State's 15 year plea offer or [authorize] me to attempt to negotiate a better deal.  Every time I would bring up the possibility of a plea bargain [Petitioner] would become extremely agitated, raise his voice, and shout down my suggestion that we negotiate on his behalf." *Id.* at 3.

- Trial counsel and [Petitioner] "reviewed the discovery together on multiple occasions." *Id.* at 3.

- "I asked [Petitioner] if he wanted to testify and he stated he did not want to testify." *Id.* at 4;

This Court finds that said assertions are truthful and credible.

3)      [Petitioner] has submitted false claims and evidence in support of his application, and has waived and abandoned any contention he might have. *See Ex parte Gaither,* 387 S.W.3d 643, 645 (Tex. Crim. App. 2012).

4)      [Petitioner] should be cited for abuse of the writ for filing a frivolous application "brought for the purpose of abusing judicial resources," and the Court should forward its finding to T.D.C.J. to deduct 'good conduct' time as applicable under Tex. Gov't Code § 498.0045.

5)      In any event, [Petitioner] has not shown deficient performance of counsel or prejudice.

(Dkt. No. 18-74 at 32–33).  The Texas Court of Criminal Appeals adopted the trial court's findings when it denied relief without written order.  (Dkt. No. 18-58).

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of *Strickland*.  Here, trial counsel's affidavit—adopted by the state habeas court and ultimately by the Texas Court of Criminal Appeals—contradicted Petitioner's allegations that he did not (1) consult with Petitioner, (2) review discovery with him or present a defense, (3) communicate plea offers, or (4) allow him to testify.  Petitioner has not shown that counsel's recollection was incorrect, much less demonstrated that state court's ruling on trial counsel's performance "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### 4.    Lack of Prejudice

Finally, even if Petitioner could establish that counsel's performance in this case constituted deficient performance, he still fails to demonstrate that the alleged errors were prejudicial to his defense.  Again, to demonstrate prejudice, a petitioner "must show that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "[A] court assessing prejudice must consider the totality of the evidence before the judge or jury." *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 696) (internal quotation marks omitted).

Petitioner has not established that the alleged errors were prejudicial because, as the record demonstrates, the State's case was strong and there was substantial corroborated evidence against Petitioner.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (same).  As counsel noted in his affidavit before the state habeas court, "[t]he prosecution presented a devastating case against [Petitioner]."  (Dkt. No. 18-74 at 6).  In addition to testimony from the victim herself, this evidence included:

- Police witnesses who had visited Petitioner's residence on over a dozen domestic violence calls;

- Two medical experts who testified that the victim's injuries were caused by domestic violence strangulation;

- Photographs of the victim's injuries including one where Petitioner had struck the victim so hard, he left a complete handprint on her thigh;

- Recorded phone calls and GPS coordinates which demonstrated Petitioner had violated the victim's protective order; and

- A two-hour police interview in which Petitioner confessed to beating the victim on multiple occasions, to knowingly violating the protective order, and to smoking methamphetamine.

*Id*.

Given the overwhelming nature of the evidence against Petitioner, there is simply no reasonable probability that the jury would have voted to acquit Petitioner had counsel not committed the errors Petitioner now accuses him of making.  Consequently, viewing these allegations under the deferential standard that applies on federal habeas review, Petitioner has

not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claims.

### C.     Double Jeopardy (Claim 2)

In his second claim for relief, Petitioner alleges that his conviction on counts 2–6 violated the principles of double jeopardy because they involve the same elements, evidence, conduct, and victim as his conviction for continuous family violence in count 1.  The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  This clause protects against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  *United States v. Dixon*, 509 U.S. 688, 695–96 (1993).  In the multiple-punishment context, the Double Jeopardy Clause protects only against the imposition of multiple criminal punishments for the same offense.  *Hudson v. United States*, 522 U.S. 93, 99 (1997).

Petitioner contends that, as a result of his conviction on count 1 for continuous violence against family, his conviction on the remaining counts constitutes multiple criminal punishments for the same offense because they all relate to the same victim around the same time period.[2] Citing Texas Penal Code § 25.11—the continuous violence against family statute—Petitioner argues that he cannot be convicted of any other offenses against the same victim because the statute was only intended to be used by itself.  Petitioner apparently misread the statute.  In relevant part, Section 25.11 states:

> (a)     A person commits an offense if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that

---

[2]    Petitioner includes count 3 in his double jeopardy claim.  However, no such double jeopardy violation could have occurred because Petitioner was acquitted of this charge by the jury. (Dkt. No. 18-74 at 87).

constitutes an offense under Section 22.01(a)(1) [assault] against another person or persons whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code.

. . .

(c)     A defendant may not be convicted in the same criminal action of another offense the victim of which is an alleged victim of the offense under Subsection (a) *and an element of which is any conduct that is alleged as an element of the offense under Subsection (a)* unless the other offense:

    (1)     is charged in the alternative;

    (2)     occurred outside the period in which the offense alleged under Subsection (a) was committed; or

    (3)     is considered by the trier of fact to be a lesser included offense of the offense alleged under Subsection (a).

(d)     A defendant may not be charged *with more than one count under Subsection (a)* if all of the specific conduct that is alleged to have been engaged in is alleged to have been committed against a single victim or members of the same household, as defined by Section 71.005, Family Code.

Tex. Penal Code § 25.11 (emphasis added).

While subsection (d) of the statute clearly precludes more than one § 25.11(a) count under certain circumstances, Petitioner was only charged with one count under § 25.11. And the statute says nothing about the preclusion of charges on other offenses *outside of* § 25.11. Thus, contrary to Petitioner's argument, his conviction on the remaining counts does not conflict in any way with the language of § 25.11(d).

Petitioner's argument fairs no better under subsection (c). Under subsection (c), a defendant may be convicted of another offense against the same victim, as long as that offense was not alleged as an element of the continuous violence against family offense. Here, the jury instructions for count 1 asked the jury to determine whether Petitioner "intentionally, knowingly, or recklessly caused bodily injury" to the victim on at least two of the five dates alleged. (Dkt.

14

No. 18-18 at 10–15).   Neither count 5 (repeated violation of bond conditions) nor count 6 (evading arrest) can even remotely be considered elements of the continuous family violence offense alleged in count 1, as neither require the jury to find that Petitioner intentionally, knowingly, or recklessly caused bodily injury to the victim.  *Id.*

Counts 2 (assault family violence) and 4 (aggravated assault) are trickier, as both contain the same element—a showing that Petitioner intentionally, knowingly, or recklessly caused bodily injury to the victim—as count 1.  But as explained by the State during Petitioner's state habeas proceeding, the specific offenses alleged in counts 2 and 4 were not elements of the continuous violence against family offense alleged in count 1:

> In the instant case, the charge to the jury ensured there was no overlap between the allegations supporting the § 25.11(a) charge in Count I and the allegations in other counts. [footnote omitted].
>
> . . .
>
> The distinct conduct underlying each assaultive count was alleged in the charge to the jury, in pertinent part, as follows:
>
> **Count I: From July 15, 2014 through June 21, 2015, [Petitioner] did two or more of the following:**
>
> - caused bodily injury to [the victim] by grabbing, shoving, striking or throwing her on or about August 29, 2014;
>
> - caused bodily injury to [the victim] *by striking or shoving her with his hands* on or about **September 20, 2014;**
>
> - caused bodily injury to [the victim] by striking her leg or face with [Petitioner]'s hands or fists on or about March 29, 2015;
>
> - caused bodily injury to [the victim] *by striking her on her hands or arms with a wooden axe handle* on or about **May 25, 2015;** or
>
> - caused bodily injury to [the victim] by hitting her on or about June 18, 2015.

(V R.R. at 33-35).

**Count II: Assault Family Violence by Impeding Breath:**

- [Petitioner] caused injury to [the victim] *by impeding her breath by applying pressure to her throat* with [Petitioner]'s arms or hands on or about **September 20, 2014.**

*(id.* at 36-37).

**Count IV: Aggravated Assault with a Deadly Weapon:**

- [Petitioner] threatened [the victim] with imminent bodily injury *by swinging a wooden axe handle—a deadly weapon—at her [leg]* on or about **May 25, 2015.**

*(id.* at 38-39).

. . .

> While Count II and Count IV alleged conduct which occurred on the same date as other conduct alleged under Count I,[3] each of those counts relied on conduct which was *different* from the specific conduct alleged under Count I. Count II alleged 'impeding breath' while the conduct from the same date under Count I alleged 'striking or shoving' to cause bodily injury. Similarly, Count IV was predicated on swinging the axe handle at [the victim]'s leg (*see also* V R.R. at 46 & 50) (State argues Count I relates to hitting [the victim]'s hand, while Count IV is based on the immediately prior swinging the axe handle at [the victim]'s leg), 49 (State distinguishes strangulation conduct in Count II). *See also Denton,* 399 S.W.3d 555–56; *Ruiz,* 2002 Tex. App. LEXIS 735 at *4–5; *Dimas v. State,* Nos. 09-14-00018-CR, 09-14-00019-CR, 2015 Tex. App. LEXIS 11025, at *13 (Tex. App.—Beaumont Oct. 28, 2015, no pet.) (not designated for publication) (rejecting a double jeopardy claim based on two assaults against the same victim on the same day, because the first assault ended before the second began).

(Dkt. No. 18-73 at 114–19).

The state habeas trial court adopted the State's Answer as its findings of fact and

conclusions of law, which the Texas Court of Criminal Appeals adopted when it denied relief

---

[3]   Notably, it is [Petitioner]'s burden to show a double jeopardy violation, and it is possible the jurors relied on the August 29, 2014, March 29, 2015, and June 18, 2015 assaults for Count I, which would further eliminate any double jeopardy issue. *Cf. Ex parte Infante,* 151 S.W.3d 255, 262 (Tex. App.—Texarkana 2004, no pet.) (". . . in a double jeopardy challenge, the defendant has the burden to provide a record that both establishes the commonality of the offenses *and* shows the State will be relying on the same instances of misconduct for which the accused was previously convicted or acquitted"); *see also infra.*

without written order.  (Dkt. Nos. 18-58, 18-73 at 160–61).  Petitioner fails to show that the state

court's ruling was contrary to, or involved an unreasonable application of, federal law, or that it

was an unreasonable determination of the facts based on the evidence in the record.  Both counts

2 and 4 allege different conduct than that alleged in count 1 and do not amount to a violation of

the Double Jeopardy Clause.  Relief is therefore denied.

### D.   Confrontation Clause/Indictment (Claim 3(b))

On April 11, 2017, a pretrial hearing was held before the state trial court where the

parties agreed to amend count 4 of the indictment to list the offense date as May 25, 2015,

instead of March 29, 2015, as originally listed.  (Dkt. No. 18-74 at 12–22).  Because he was not

present at this hearing, Petitioner alleges that his rights to confrontation and due process were

violated by the amendment of the indictment.  According to Petitioner, both state and federal law

require his presence at such a pretrial hearing.[4]  As discussed below, however, Petitioner fails to

demonstrate that the state court's rejection of this claim during his state habeas corpus

proceeding was either contrary to, or an unreasonable application of, Supreme Court precedent.

A defendant's constitutional right to be present during trial is rooted in the Confrontation

Clause of the Sixth Amendment.  *See Illinois v. Allen,* 397 U.S. 337, 338 (1970).  The core

concern of the right to courtroom presence is that a defendant's "absence might frustrate the

fairness of the proceedings . . ."  *Faretta v. California*, 422 U.S. 806, 820 n.15 (1975).  To that

end, the Supreme Court has held that "a defendant is guaranteed the right to be present at any

stage of the criminal proceeding that is critical to its outcome if his presence would contribute to

---

[4]   To the extent Petitioner claims his absence violates article 28.01 of the Texas Code of
Criminal Procedure, no federal constitutional claim is implicated.  *See Swarthout v. Cooke*,
562 U.S. 216, 219 (2011) (stating that the Court has repeatedly held that "federal habeas
corpus relief does not lie for errors of state law.") (citations omitted); *Fuller v. Johnson*, 158
F.3d 903, 908 (5th Cir. 1998) (failure to follow Texas law is not reviewable).

the fairness of the proceeding." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). However, due process does not require the defendant's presence when it would be useless or only slightly beneficial. *See Snyder v. Massachusetts*, 291 U.S. 97, 106–08 (1934) (concluding the presence of a defendant is required "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only"). If the defendant's presence does not bear "'reasonably substantial" relationship to the opportunity to defend, no harm will result from a defendant's absence. *Id*.

In this case, Petitioner has cited no relevant precedent holding that a defendant has a constitutional right to be present during a pretrial hearing where the parties agree to amend the indictment. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("mere conclusory statements do not raise a constitutional issue in a habeas case") (citations omitted). Indeed, the Court is unaware of any precedent finding that such a hearing was a critical stage of trial during which Petitioner's presence "would contribute to the fairness of the proceedings." *Stincer*, 482 U.S. at 745.

Moreover, Petitioner has not shown that his presence during the pretrial hearing would have been helpful. While Petitioner complains that the indictment was amended without his permission to list the offense date as May 25, 2015, the State could still have argued that the offense occurred on that date without amending the indictment because of the "on or about" language it contained. *See Vidaurri v. State,* 230 S.W.2d 536, 537 (1950) ("The state is not bound to prove the offense to have been committed upon the day alleged, the allegation 'on or about' being sufficient to cover any date prior to the date of the complaint and within the period of limitation.").

In short, Petitioner does not establish that he "could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending." *Stincer*, 482 U.S. at 747 (alterations in original). Petitioner's absence therefore did not violate his due process rights because his "presence would be useless, or the benefit but a shadow . . ." *Id*. at 745 (quoting *Snyder*, 291 U.S. at 106–07). Consequently, Petitioner fails to demonstrate that the state court's rejection of this claim was unreasonable.

Finally, although couched in terms of Petitioner's rights to confrontation and due process, Petitioner's allegation essentially challenges the validity of the indictment that resulted from the pretrial amendment. But the sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. *Evans v. Cain,* 577 F.3d 620, 624 (5th Cir. 2009). State law dictates whether a state indictment is sufficient to confer a court with jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). As such, this Court is "required to accord due deference to the state's interpretation of its own law that a defect of substance in an indictment does not deprive a state trial court of jurisdiction." *Id*. at 69 (citations omitted). The issue is foreclosed from consideration on federal habeas review if "the sufficiency of the [indictment] was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (citation omitted). Because the state habeas court considered and rejected Petitioner's allegation concerning the amended indictment, federal habeas relief is unavailable.

### E.      False Evidence (Claim 4)

In Claim 4, Petitioner alleges that there was no evidence that he assaulted the victim on June 18, 2015, as alleged in count 1 of the indictment. Petitioner also contends that, during

direct examination of the victim, the prosecution questioned the victim about an assault that took place in October 2014 despite no evidence it happened. (Dkt. No. 18-18 at 28–29).  According to Petitioner, the State knowingly presented these false allegations in violation of his due process rights under *Napue v. Illinois*, 360 U.S. 264 (1959).  As discussed below, however, Petitioner fails to show that the state court's rejection of these allegations during his state habeas proceeding was unreasonable.

Under *Napue*, a criminal defendant is denied due process when the State knowingly uses perjured testimony or allows false testimony to go uncorrected at trial.  360 U.S. at 269; *see also Giglio v. United States*, 405 U.S. 150 (1972).  A petitioner seeking to obtain relief on such a claim must show that (1) the testimony is false, (2) the prosecution knew that the testimony was false, and (3) the testimony was material.  *United States v. Dvorin*, 817 F.3d 438, 451-52 (5th Cir. 2016); *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007).  False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict.  *Giglio*, 405 U.S. at 153-54; *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Here, Petitioner argues the State knowingly introduced false evidence concerning assaults that allegedly took place in October 2014 and again on June 18, 2015.  Yet, Petitioner's contentions that there is "no evidence" to support these allegations is based on nothing more than his bare assertions as to what occurred.  "Absent evidence in the record," however, a court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."  *Ford*, 910 F.3d at 235 (citing *Ross*, 694 F.2d at 1011).  Moreover, Petitioner's conclusory opinion as to the veracity of the victim's testimony does not establish that her testimony was false or that the prosecution knew the testimony was false.  *Little v. Butler*,

848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was perjured).  As such, Petitioner's fourth claim could be denied solely because it is conclusory.  *Ross*, 694 F.2d at 1011 (finding that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Regardless, assuming Petitioner is correct that there was "no evidence" establishing that the victim was assaulted in October 2014 and again on June 18, 2015, any testimony to that effect still would not have been material under *Napue* because the prosecution was not required to establish a specific date for the assaults.  Again, because of the "on or about" language contained in the indictment, the State could still argue that an offense occurred on a specific date without establishing the actual date it occurred.  *See Vidaurri*, 230 S.W.2d at 537 ("The state is not bound to prove the offense to have been committed upon the day alleged, the allegation 'on or about' being sufficient to cover any date prior to the date of the complaint and within the period of limitation.").  Moreover, the jury still only needed to find that two of the other four incidents alleged in count 1 occurred to convict Petitioner of continuing violence against the family.  *See* Section III (C), *supra*.  Assuming there was "no evidence" supporting the fifth incident, the jury presumably found him guilty based on the other four incidents alleged.  *See Alvarado v. State*, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995) (finding that courts may presume the jury acted rationally, absent a showing to the contrary).

Consequently, viewing all of the arguments and evidence under the deferential standard that applies on federal habeas review, Petitioner has not shown that his *Napue* allegation has merit, much less that the state court's rejection of the claim was objectively unreasonable.  Relief is therefore denied.

F.      **Sufficiency of the Evidence (Claim 5)**

In his final allegation, Petitioner argues that the State failed to present sufficient evidence to support his conviction on count 5 for repeatedly violating a court order of emergency protection.  According to Petitioner, the only evidence of a violation came from one incident, and not repeated incidents as alleged in the indictment.  The Texas Court of Criminal Appeals rejected this allegation during Petitioner's state habeas corpus proceedings.  Similar to his other allegations, Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

1.      The *Jackson* Standard

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court enunciated the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding.  The Court stated the issue to be "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.  In applying this standard*,* the Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.  Thus, all credibility choices and conflicts in inferences are to be resolved in favor of the verdict.  *United States v. Resio-Trejo,* 45 F.3d 907, 911 (5th Cir. 1995); *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994).

In addition, AEDPA imposes a "twice-deferential standard" when a federal court reviews a state prisoner's claim challenging the sufficiency of the evidence.  *Parker v. Matthews*, 567 U.S. 37, 43 (2012).  As the Supreme Court has explained:

The opinion of the Court in *Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

*Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (citations omitted).

    2.   <u>Analysis</u>

Petitioner argues there was insufficient evidence presented at trial to support a conviction for repeatedly violating a protective order. Petitioner raised this allegation during his state habeas proceedings. In recommending the denial of Petitioner's application, the state habeas trial court adopted the State's Answer as its findings of fact and conclusions of law, which concluded there was sufficient evidence to support the conviction:

> In his fifth ground, [Petitioner] claims there is no evidence he repeatedly violated a protective order. Application at 14. The charge to the jury explained that a person "commits an offense" if he knowingly or intentionally "goes to or near the following places as specifically described in the order: the residence of a protected individual" two or more times (V R.R. at 39). The period described in the charge was from July 15, 2014 through June 21, 2015 (*id.* at 40). The charge further asked the jury to determine whether [Petitioner] went "within 200 feet of" [the victim]'s residence on or about the following dates:

> - June 18, 2015

> - June 20, 2015

> - June 21, 2015

> (*id.* at 40-41).

> Although [Petitioner] admits he violated the protective order on June 21, 2015, [Petitioner] apparently asserts that he was not *formally arrested* on some of the aforementioned dates for "violation of a protective order," and therefore there was "no evidence" he violated the order. *See* Application at 14. However, the State was not required to prove formal arrests on each date, but merely that he was at the residence on the aforementioned dates, which would violate the order (*see* VII R.R. at 82–86 (State's Ex. 39—protective order effective May 25,

2015 for 61 days prohibited [Petitioner] from going to or within 200 feet of [the victim]'s residence)).

First, evidence established that [Petitioner] was 'in the residence' in violation of the protective order on June 21, 2015 (IV R.R. at 149–50). [The victim] confirmed he was inside (*id.* at 151). When [Petitioner] came out of the residence, he looked towards Constable Rapp, turned around—and after Rapp told him to stop—[Petitioner] "continued back into the residence" (*id.* at 152). [Petitioner] apparently locked the front door (*id.*). [Petitioner] was later found hiding under a pile of clothing (*id.*).

Second, [Petitioner] admitted to being at the residence on June 18th. As noted *supra*, in State's Exhibit 47—[Petitioner]'s recorded interview on June 22, 2015—the following dialogue occurred between Detective Moreno and [Petitioner]:

| | |
|---|---|
| Moreno: | Now since [the aggravated assault with the axe handle], there's an incident on the—*looks like June 18th . . . few days ago. Were you at the house that day?* |
| [Petitioner]: | *On the 18th?* |
| Moreno: | [Yes]. |
| [Petitioner]: | *I believe I was.* |
| Moreno: | Okay. |
| [Petitioner]: | I had nowhere else to go. |
| Moreno: | *Okay. So, you were in the house when our deputies came?* |
| [Petitioner]: | *Yes.* |
| . . . | |
| Moreno: | That was on the 18th, and uh, our deputies didn't make contact with you that day, but we did get a report that there'd been a disturbance up there. But you were there that day? |
| [Petitioner]: | Mm-hmm. |
| Moreno: | Were you there the whole day or the whole night? |
| [Petitioner]: | Mm-hmm. |

State's Ex. 47 at 21:50–24:30 (emphasis added).

Third, [Petitioner] had evaded or barricaded himself in the same residence [sic] on June 20, 2015, when officers came to the residence in response to a call (IV R.R. at 149–150). Constable Rapp testified that when he responded to the residence on June 21, 2015:

> I advised Mr. Cueva that I was there because I was concerned about [the victim]. And *due to the call that we had received the night before and in speaking with Mr. Cueva, I asked him if there was a male in the residence.*

> Mr. Cueva advised that there was, and I further confirmed who the male subject was that was in the residence. And he advised that [Petitioner] was in the residence . . .

> I asked Officer Rollings to move to the rear of the residence. [Petitioner] has a history of evading law enforcement. And, again, *the night prior [June 20, 2015], [Petitioner] either evaded or barricaded himself in the residence. We were unable to make contact with him".*

(*id.* at 149–150 (emphasis added); *see also id.* at 147 ("The night prior to June 21st he had responded to a call of a disturbance . . .").

(Dkt. No. 18-73 at 128–33). The Texas Court of Criminal Appeals adopted the trial court's findings when it denied relief without written order. (Dkt. No. 18-58).

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. As demonstrated by the trial court's findings, the record clearly demonstrates that Petitioner was present in the victim's residence on at least two occasions—June 18, 2015 and June 21, 2015. The evidence also showed that Petitioner was present on June 20, 2015, and apparently stayed overnight until June 21, 2015. Petitioner has not shown that the state court's determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Federal habeas relief is therefore denied.

## IV.     CERTIFICATE OF APPEALABILITY

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has explained that the showing required under § 2253(c)(2) is straightforward when a district court has rejected a petitioner's constitutional claims on the merits:  The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El*, 537 U.S. at 336 (citation omitted).

The issue becomes somewhat more complicated when the district court denies relief on procedural grounds.  *Id*.  In that case, the petitioner seeking COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (citing *Slack,* 529 U.S. at 484).  In other words, a COA should issue if the petitioner *not only* shows that the lower court's procedural ruling is debatable among jurists of reason, but also makes a substantial showing of the denial of a constitutional right.

A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set

forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

## V.      CONCLUSION AND ORDER

After careful consideration, the Court concludes that Petitioner's Claims 1(d), (e), (h), (k), (m), and (n), as well as Claim 3(a), are all unexhausted and procedurally barred from federal habeas review.  Concerning the remainder of Petitioner's allegations, Petitioner has failed to establish that the state court's rejection of the allegations on the merits during either his direct appeal or state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that federal habeas corpus relief is **DENIED** and Petitioner Jason Wayne McBride's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is **DISMISSED WITH PREJUDICE**.

It is **FURTHER ORDERED** that no Certificate of Appealability shall issue in this case.

It is **FURTHER ORDERED** that all remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this  25th  day of February, 2022.

ORLANDO L. GARCIA
Chief United States District Judge